UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

United States of America,

　　　　　Plaintiff,

　vs.                                      REPORT AND RECOMMENDATION

Daniel Charles Jourdain,

　　　　　Defendant.                    Crim. No. 05-439 (JRT/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I. Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Defendant's Motion for the Suppression of Confessions or Statements.

A Hearing on the Motion was conducted on January 18, 2006, at which time, the Defendant appeared personally, and by Paul C. Engh, Esq., and the Government appeared by Erica H. MacDonald, Assistant United States Attorney.  For reasons which follow, we recommend that the Defendant's Motion to Suppress Confessions or Statements be denied.

## II. Factual Background

The Defendant is charged with one Count of Aggravated Sexual Abuse, in violation of Title 18 U.S.C. §§1151, 1152, 2241(c) and 2246(2).   The alleged Aggravated Sexual Abuse is said to have occurred in April of 2005.   The alleged violations are also alleged to have occurred within the exterior boundaries of the Red Lake Indian Reservation, in this State and District.   As pertinent to those charges, and to the Motions pending before us, the operative facts may be briefly summarized.[1]

John Egelhof ("Egelhof"), who  is a Special Agent for the Federal Bureau of Investigation ("FBI"), testified at the Hearing on the Motions.   Prior to the interview which gives rise to this Motion, Egelhof, who is the FBI agent assigned to this case, was aware of the underlying facts of the case, and the associated Red Lake Police investigation.   On September 14, 2005, Egelhof and Bryan Peterson ("Peterson"), who

---

[1]Rule 12(e), Federal Rules of Criminal Procedure, provides that "[w]here factual issues are involved in determining a motion, the court shall state its essential findings on the record."   As augmented by our recitation of factual findings in our "Discussion," the essential factual findings, that are required by the Recommendations we make, are contained in this segment of our Opinion.   Of course, these factual findings are preliminary in nature, are confined solely to the Motions before the Court, and are subject to such future modification as the subsequent devel-opment of the facts and law may require.   See, United States v. Moore, 936 F.2d 287, 288-89 (6th Cir. 1991); United States v. Prieto-Villa, 910 F.2d 601, 610 (9th Cir. 1990).

is an investigator with the Red Lake Police Department, drove together to the Defendant's residence on the Red Lake Indian Reservation.  Egelhof and Peterson were driving an unmarked vehicle, were dressed casually, and were armed, although Egelhof testified that he thought that their firearms were covered by their clothing, and were not displayed.

At approximately 4:00 o'clock p.m., Egelhof and Peterson spotted the Defendant's car at his residence, and parked their car on the Defendant's driveway. Together, Egelhof and Peterson approached the side door of the Defendant's home and knocked.  Upon hearing no response, Egelhof went to the Defendant's front door by himself, while Peterson remained at the side door.  Egelhoff knocked on the door, and heard "low voices" coming from the home.  Egelhof testified that the door was shut, but that the window at the front of the house was open.  Upon hearing the voices inside, Egelhof told the Defendant that he could be heard from outside, and he stated that he just wanted to speak with the Defendant, that he did not have a Warrant for the Defendant's arrest, and that he was not there to arrest him.  After those words were spoken, the Defendant appeared at the door.

Egelhof reiterated that he just wanted to speak with the Defendant, and was not there to arrest him.  Egelhof asked the Defendant if he would be willing to travel to the

police department for an interview, and the Defendant responded that he would have to bring his two (2) year old son with him.  Egelhof noted that the Defendant's son was undressed.  Egelhof then asked if it would be more convenient to conduct the interview inside the Defendant's home.  The Defendant invited Egelhof and Peterson into his home, and led them to the dining room area.  The only persons, who were present in the Defendant's home at that time, were the Defendant, Egelhof, Peterson, and the Defendant's son.

Thereafter, Egelhof told the Defendant why they were at his home, and he asked whether it would be alright if he recorded the interview.  The Defendant gave his consent to the recording.  Egelhof repeated that they were not there to arrest the Defendant, and that they would leave at any time if the Defendant did not want them there.  Egelhof testified that no weapons were displayed, and that his tone of voice was appropriate for normal conversation.  Egelhof and the Defendant sat at separate sides of the dining table, while Peterson was a few feet away.  The Defendant's son was running around the dining room area, and also spent some time sitting in Peterson's lap.  Egelhof testified that he never touched the Defendant, and never restricted the Defendant's movement in any manner.  The Defendant primarily sat through the course

of the interview -- which lasted for just under one (1) hour.  At one point during the interview, the Defendant did stand up in order to assist his son.

Throughout the interview, Egelhof reiterated that the Defendant would not be placed under arrest at that time, or upon the conclusion of the interview, and that he was under no obligation to talk to them, and that Egelhof and Peterson would leave if asked to do so by the Defendant.  Egelhof testified that he never told the Defendant any lies or made any bluffs, and he interviewed the Defendant in a straight-forward manner.  Egelhof also testified that the Defendant never asked to have Egelhof leave his home, and he never refused to answer a question.  At the end of the interview, the Defendant stated that he would undergo a polygraph test in the coming days.

At the conclusion of the interview, and after the tape recorder was turned off, Egelhof asked the Defendant if he could inspect the condition of the Defendant's bedroom.  The Defendant agreed and showed them the bedroom immediately after the interview.  Egelhof and Peterson then left the Defendant's residence.

On the following day, Egelhof went back to the Defendant's house to follow up on the polygraph test that the Defendant had spoken about on the previous day.  At that time, the Defendant said he would prefer not to speak with the police any further

until he had a chance to confer with an lawyer.  At that point, Egelhof left the residence.  The Defendant was arrested approximately three (3) months later.

At the Hearing, Egelhof testified that, during the interview, the Defendant appeared to be of average intelligence, and that he responded appropriately to the questions he was asked.  Egelhof also testified, in keeping with his prior experience, that the Defendant did not appear to be under the influence of alcohol or any drugs -- noting that the Defendant did not exhibit any slurred speech, bloodshot eyes, or smell of alcohol.  Although Egelhof  stated that he did not believe that he turned off the recording at any point during the interview, our review of the recording reflects that the tape recorder was turned off for a three (3) minute period while Egelhoff attempted to make arrangements for the Plaintiff's proposed polygraph test on the following day.

### III.  Discussion

A.      Standard of Review.  Government agents are not required to administer Miranda warnings to everyone they question.  See, Oregon v. Mathiason, 429 U.S. 492, 495 (1977).  Rather, Miranda warnings are required for official interrogations where a person has been "'taken into custody or otherwise deprived of his freedom of action in any significant way.'"  Stansbury v. California, 511 U.S. 318, 322 (1994),

quoting Miranda v. Arizona, supra at 444; United States v. Helmel, 769 F.2d 1306, 1320 (8th Cir. 1985); Berkemer v. McCarty, 468 U.S. 420, 428-29 (1984).  Once a suspect is in police custody and subject to interrogation, the suspect must be informed of his constitutional right to remain silent, and to be represented by legal counsel during questioning.  See, Miranda v. Arizona, supra at 473; see also, Dormire v. Wilkinson, 249 F.3d 801, 804 (8th Cir. 2001).

"In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but 'the ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." Stansbury v. California, supra at 322, quoting California v. Beheler, 463 U.S. 1121, 1125 (1983).  A list of common indicia of custody, that has been identified by our Court of Appeals, includes the following:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning

- 7 -

was police dominated; or (6) whether the suspect was placed under arrest at the termination of the questioning.

United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir 1990); see United States v. Czichray, 378 F.3d 822, 827 (8th Cir. 2004), cert. denied --- U.S. ---, 125 S.Ct. 2514 (2005); United States v. Axsom, 289 F.3d 496, 500, 501 (8th Cir. 2002).

However, these factors "are by no means exhaustive and should not be applied ritualistically, counting indicia which contribute to custody against those which detract." United States v. Brave Heart, 397 F.3d 1035, 1039 (8th Cir. 2005), citing United States v. Czichray, supra at 827. Instead, the Griffin factors serve as a guide in the resolution of the ultimate inquiry of "whether the defendant was restrained as though he were under formal arrest." See, United States v. Czichray, supra at 827.

Whether or not Miranda is implicated, the Supreme Court has recognized that, in order for a confession to be admitted into evidence, it must be voluntary if it is to satisfy the Fifth Amendment's right against self-incrimination. See, Dickerson v. United States, 530 U.S. 428, 433-34 (2000). For a confession to be considered voluntary, a Court must examine "'whether a defendant's will was overborne' by the circumstances surrounding the giving of a confession." Dickerson v. United States, supra at 434, citing Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973).

As the Supreme Court has recently explained:

- 8 -

> The due process test takes into consideration "the totality
> of all the surrounding circumstances -- both the
> characteristics of the accused and the details of the
> interrogation." [Schneckloth v. Bustamonte, 412 U.S. at
> 226.]  See also Haynes [v. Washington, 373 U.S. 503, 513]
> (1963); Gallegos v. Colorado, [370 U.S. 49, 55] (1962);
> Reck v. Pate, [367 U.S. 433, 440] (1961) ("[A]ll the
> circumstances attendant upon the confession must be taken
> into account"); Malinski v. New York, [324 U.S. 401, 404]
> (1945) ("If all the attendant circumstances indicate that the
> confession was coerced or compelled, it may not be used
> to convict a defendant").  The determination "depend[s]
> upon a weighing of the circumstances of pressure against
> the power of resistance of the person confessing." Stein v.
> New York, [346 U.S. 156, 185] (1953).

Id. at 434.

Among the circumstances, which are to be considered in this analysis are, first and foremost, whether a Miranda warning has been given, see, Withrow v. Williams, 507 U.S. 680, 693 (1993); any elements of "police coercion," see, Colorado v. Connelly, 479 U.S. 157, 167 (1986); the length of the interrogation, see, Ashcraft v. Tennessee, 322 U.S. 143, 153-154 (1944); the location of the interrogation, see, Reck v. Pate, 367 U.S. 433, 441 (1961); and the continuous nature of the interrogation, see, Leyra v. Denno, 347 U.S. 556, 561 (1954).  See also, Withrow v. Williams, supra at 693 (listing the applicable considerations).

B.    <u>Legal Analysis</u>.   The Defendant has challenged the admissibility of the statements he made during his interview on September 14, 2005.   The Record is devoid of any evidence that the Defendant was advised of his <u>Miranda</u> rights at any time prior to, or during, the interview session, and the Defendant's statements were made in response to direct questioning from the Agents.   Accordingly, the pertinent inquiry is whether the Defendant was in custody, so as to require a <u>Miranda</u> advisory, and if not, whether the Defendant's statements were otherwise involuntary.

As noted, the interview on September 14, 2005, was conducted by two Agents, at the Defendant's home, with the express permission of the Defendant.   There is no indication that the Defendant had his freedom of movement restrained in any way. Indeed, at times, the Defendant stood up from the table, where he was being interviewed, in order to address the needs of his son, which included the changing of a diaper.   The  Defendant was advised, repeatedly, that he would not be placed under arrest at the close of the interview.   Egelhoff also advised the Defendant that he did not have to answer their questions, and that the Defendant would be free to stop the interview at any time.

Moreover, there is nothing to suggest that the Agents employed any deceptive stratagems, or strong arm tactics, or even raised their voices, at any time, during the

interview.  The interview was conducted in less than an hour, and ended amicably.

Furthermore, the Defendant was not arrested until approximately three (3) months after

the conclusion of the interview.  Accordingly, applying the <u>Griffin</u> factors, we find that

the Defendant was not in custody during the interview on March 22, 2005.  See <u>United</u>

<u>States v. Czichray</u>, supra at 830 ("Where a suspect is questioned in the familiar

surroundings of his home, and informed several times of his right to terminate the

interview at will, we believe that strong evidence of restraint on freedom of movement

of the degree associated with formal arrest is necessary to overcome the natural

inference that such questioning is non-custodial.").

We must also determine, consistent with the requisites of the Fifth Amendment,

whether the statements given by the Defendant were voluntary, or whether they were

the product of an overborne will, and we proceed to that inquiry.

Notably, the Defendant fails to sustain an assertion, that his statements were

involuntary, with any specific, and evidence-based, instances of coercion.  As we have

detailed, the Defendant's interview was the product of his election to cooperate with

law enforcement.  The Defendant does not contend that the length of the interrogation

was unduly burdensome, that he was denied any of the normal accommodations of

daily living, or that the agents duped him into lending his cooperation to their

investigation.  He does not suggest, let alone support, the existence of any physical, or mental impairments, which would impact upon the voluntariness analysis, nor urge any age-related naivety which would reflect a less than voluntary choice, on his part, to answer law enforcement's questions.

Accordingly, we find that the Defendant's will was not over-borne and, under the totality of the circumstances, we conclude that the Defendant's statements, which were made during the interview on September 14, 2005, were voluntary, and therefore, the Defendant's Motion to Suppress those statements should be denied.

NOW, THEREFORE, It is --

RECOMMENDED:

That the Defendant's Motion to Exclude Statements and Confessions [Docket No. 26] be denied.

Dated:  January 23, 2006                  s/Raymond L. Erickson
                                          Raymond L. Erickson
                                          CHIEF U.S. MAGISTRATE JUDGE

- 12 -

## NOTICE

Pursuant to Rule 45(a), Federal Rules of Criminal Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than February 9, 2006**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than February 9, 2006**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.