# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

UNITED STATES OF AMERICA,                    Criminal No. 05-439 (JRT/RLE)

                          Plaintiff,

v.                                                                **ORDER**

DANIEL CHARLES JOURDAIN,

                          Defendant.

---

Erica H. MacDonald, Assistant United States Attorney, **OFFICE OF THE UNITED STATES ATTORNEY**, 600 United States Courthouse, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for plaintiff.

Paul C. Engh, **ENGH LAW OFFICE**, 220 South Sixth Street, Suite 215, Minneapolis, MN 55402, for defendant.

Defendant Daniel Jourdain is charged with one count of aggravated sexual abuse, in violation of 18 U.S.C. §§ 1151, 1152, 2241(c), and 2246(2).  Currently before the Court are defendant's appeal of United States Magistrate Judge Raymond L. Erickson's order dated January 23, 2006 and defendant's objections to the Magistrate Judge's Report and Recommendation of January 23, 2006.  For the reasons discussed below, the Court affirms the Magistrate Judge's order.   In addition, the Court overrules defendant's objections and adopts the Report and Recommendation.

**ANALYSIS**

I.    **Defendant's Appeal of the Magistrate Judge's Order**

Defendant first argues that the prosecution has violated discovery rules by failing to provide the complete medical report and a videotape of an interview of the alleged victim. In addition, defendant appeals the following portions of the Magistrate Judge's Order: denial of defense motion for a Bill of Particulars, denial of defense motion for adverse examination, and denial of defense motion for disclosure of school and related medical records. An order of a Magistrate Judge on nondispositive pretrial matters such as these may be reversed only if it is clearly erroneous or contrary to law. *See* 28 U.S.C. § 636(b)(1)(A); D. Minn. LR 72.2(a).

A.    **Defendant's motion for discovery**

The Magistrate Judge's order granted defendant's motion for discovery, based on the prosecution's representation "that it would provide the medical records and videotapes." Defendant argues that the prosecution has violated discovery rules and the Magistrate Judge's order, and urges this Court to order the prosecution to comply.

The prosecution provided defendant with the medical records but redacted the records heavily. The section titled "History of Presenting Complaint" summarizes the examiner's interview of the alleged victim's parents and is essentially fully redacted. The section titled "Interview with [the alleged victim]" contains a narrative summary of the examiner's questions and the alleged victim's responses. The prosecution redacted the entire summary, which covered over four pages of the report. The redaction is not

justified under the Protective Order issued in this case.[1]  In addition, the prosecution has not given the videotape of the interview to defendant.

The prosecution explains that it believes the Jencks Act covers the redactions in the medical report and the videotape, and that it has agreed to disclose Jencks Act material three calendar days before trial.  The prosecution does not specifically explain why it believes the Jencks Act covers the redacted material in the medical report.  Even though the redacted material contains some quotations from the alleged victim and a summary of the examiner's interviews, it cannot qualify as a witness statement of the alleged victim or his parents because there is no indication that these individuals "signed or otherwise adopted or approved" the statements.  See 18 U.S.C. § 3500(e)(1).

Defendant argues that the medical records and videotape must be disclosed pursuant to Rule 16(a)(1)(D) because they are "material to the preparation of the defense or are intended for use by the government as evidence in chief at the trial."  Fed. R. Crim. P. 16(a)(1)(D).  Defendant also asserts that this information must be disclosed pursuant to Rule 16(a)(1)(E) because they form the "bases and the reasons" for the prosecution's expert witness opinions.  Furthermore, defendant argues that the prosecution promised at the motion hearing before the Magistrate Judge that it would provide defendant the videotape of the interview with the alleged victim.

---

[1] The Protective Order restricts defendant from disclosing to others "[a]ll evidence or other information disclosed by the government to defendant containing videotapes of the victim taken during the physical examinations and reports of physical and psychological examinations of the victim."

The Court agrees that the medical records and videotape are highly relevant to the defense of this case.  Accordingly, the prosecution should turn them over to defendant pursuant to the Magistrate Judge's January 23, 2006 Order granting defendant's motion for discovery.  Disclosure should take place immediately, without any further delay.[2]

### B.      Defendant's motion for bill of particulars

Defendant seeks a bill of particulars that provides the dates and times that the alleged offenses are said to have occurred because defendant may assert an alibi defense. The prosecution asserts that the alleged incident occurred in April of 2005 and that the alleged minor victim cannot provide the detailed information sought by defendant.[3]

The Magistrate Judge denied defendant's motion for a bill of particulars, reasoning that defendant is aware of the identity of the victim and a "relatively specific" time period

---

[2]   On March 17, 2006, defendant filed a motion to dismiss the indictment.  Defendant argues that dismissal of the indictment is warranted because his expert, Dr. Barden, is unable to evaluate the process used in questioning the alleged victim because the prosecution has not disclosed the medical report and videotape.  Because the Court now orders the prosecution to immediately disclose these materials, this motion is denied without prejudice, as moot.

[3]   The prosecution stated in its Pre-hearing Response To Defendant's Pretrial Motions that "[t]here is no 'exact time' evidence of which the Government is aware."  However, the redacted statement from the medical report provides an exact date of the last alleged incident. The Magistrate Judge's Order states that the defendant was informed during the course of his interview with an agent from the Federal Bureau of Investigation that the last alleged incident was said to have occurred on April 21, 2005.  Importantly, this is not the date provided by the alleged victim, as summarized by the examiner in the redacted statement in the medical report. The Court is troubled by the fact that the prosecution did not promptly share the date from the medical records with defendant, especially if the Federal Bureau of Investigation gave defendant misinformation.  Because the Court has ordered the prosecution to turn over the medical report, the Court does not believe a Bill of Particulars is necessary.  However, if the prosecution discovers additional exact time evidence, it should promptly turn it over to the defendant.

in which the offenses allegedly happened.   *See United States v. Azure*, 2003 WL 21196265, *3 (D.N.D. May 16, 2003).

The Court concludes that the information provided to defendant is adequate to inform defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial and cannot conclude that the Magistrate Judge's Order was clearly erroneous or contrary to law.   Therefore, defendant's motion for a bill of particulars is denied.

### C.      Defendant's motion for adverse examinations

The defendant also moves for adverse physical and psychological examinations of the alleged victim.   Defendant argues that an interview by an independent psychologist is needed because there is no physical corroboration of the allegations of sexual abuse.

"[T]he court must protect a criminal defendant's right to a fair trial, but it must also protect the State's paramount interest in the welfare of the child."   *United States v. Rouse*, 111 F.3d 561, 567 (8th Cir. 1997).   The alleged victim has already undergone psychological and physical examinations, and there is no showing that the doctor who examined the child was unqualified.   The Magistrate Judge ordered the prosecution to provide the reports of these examinations to defendant, including a videotape of the interview of the alleged victim.   The Magistrate Judge reasoned that defendant's right to a fair trial would be protected because defense counsel may use the reports and videotape to cross-examine the prosecution's experts during trial.

Although the prosecution has not yet provided defendant an unredacted version of the medical records or the videotape of the interview, the prosecution will provide this information to defendant prior to trial.  Accordingly, the Court cannot conclude that the Magistrate Judge's Order was clearly erroneous or contrary to law, and the Court denies defendant's motion for adverse examination.

> **D.     Defendant's motion for the production of medical and school records for an in camera review**

Defendant moved for an in camera review of the alleged victim's hospital and medical records, school records, and records of counseling that he may have received. The trial court will conduct an in camera review of such privileged materials only if defendant has first established a basis for his claim that it contains material evidence. *Pennsylvania v. Ritchie*, 480 U.S. 39, 58, n.15 (1987).  The Magistrate Judge found that defendant could not provide any specific basis that would establish the materiality of the privileged records, and therefore denied defendant's motion without prejudice.  The Magistrate Judge noted that defendant's receipt of additional discovery materials could provide a basis for some particularized showing of the requested records' relevance.

In his appeal of the Magistrate Judge's order, defendant argues that the defense experts need the records to "conduct a thorough forensic review."  Further, defendant posits that the prosecution is likely to present an expert to explain the various symptoms a child experiences as a result of sexual abuse, and that the defense would need the records to counter that these symptoms were caused by other factors or do not exist.

At this time, the Court does not know whether the prosecution intends to make such an argument, and the Court is not persuaded by defendant's vague assertion that his experts need the records. Accordingly, the Court cannot conclude that the Magistrate Judge's Order was clearly erroneous or contrary to law. Therefore, defendant's motion for an in camera review is denied without prejudice.

## II.   Defendant's Objections To The Magistrate Judge's Report And Recommendation

Defendant moves the Court for an order suppressing his statement obtained by the Federal Bureau of Investigation because the statement was obtained without a *Miranda* warning. In a Report and Recommendation dated January 23, 2006, the Magistrate Judge concluded that the statement was not custodial and therefore did not require a *Miranda* warning. Defendant filed a timely objection to the Report and Recommendation, objecting to the Magistrate Judge's finding that the statement was not custodial. The Court conducted a de novo review of defendant's objection to the Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and D. Minn. LR 72.2(b). As explained below, the Court overrules defendant's objection and adopts the Report and Recommendation.

### A.   Background

On September 14, 2005, John Egelhof, who is a Special Agent for the Federal Bureau of Investigation, and Bryan Peterson, who is an investigator with the Red Lake Police Department, drove together to defendant's residence on the Red Lake Indian

Reservation.  Egelhof and Peterson were driving an unmarked vehicle, dressed casually, and armed, although Egelhof testified that he thought that their clothing covered their firearms.

At approximately 4:00 p.m., Egelhof and Peterson approached the side door of defendant's home and knocked.  Defendant did not answer, but the officers heard "low voices" within the home.  Defendant came to the door after Egelhof stated that he just wanted to speak with defendant, he did not have a warrant for defendant's arrest, and he was not there to arrest him.  Egelhof asked defendant if he would be willing to travel to the police department for an interview, and defendant responded that he would have to bring his two-year-old son with him.  Egelhof then asked if it would be more convenient to conduct the interview inside defendant's home.  Defendant invited Egelhof and Peterson into his home, and led them to the dining room area.  The only persons present in defendant's home at that time were defendant, Egelhof, Peterson, and defendant's son.

Thereafter, Egelhof told defendant why they were at his home, and he asked whether he could record the interview.  Defendant gave his consent to the recording.  Egelhof repeated that they were not there to arrest defendant, and that they would leave at any time if defendant did not want them there.  Egelhof testified that no weapons were displayed, and that his tone of voice was appropriate for normal conversation.  Egelhof and defendant sat at separate sides of the dining table, while Peterson was a few feet away.  Defendant's son was running around the dining room area, and also spent some time sitting in Peterson's lap.  Egelhof testified that he never touched defendant, and never restricted defendant's movement in any manner.  Defendant primarily sat through

the course of the interview, which lasted for just under one hour.  At one point during the interview, defendant stood up to assist his son.   Throughout the interview, Egelhof reiterated that defendant would not be placed under arrest at that time, or upon the conclusion of the interview, and that he was under no obligation to talk to them, and that Egelhof and Peterson would leave if asked to do so by defendant.  Egelhof testified that he never told defendant any lies, and he interviewed defendant in a straightforward manner.  Egelhof also testified that defendant never asked to have Egelhof leave his home, and he never refused to answer a question.  At the end of the interview, defendant stated that he would undergo a polygraph test in the coming days.

At the conclusion of the interview, and after the tape recorder was turned off, Egelhof asked defendant if he could inspect the condition of defendant's bedroom. Defendant agreed and showed them the bedroom immediately after the interview. Egelhof and Peterson then left defendant's residence.

On the following day, Egelhof went back to defendant's house to follow up on the polygraph test.  At that time, defendant said he would prefer not to speak with the police any further until he had a chance to confer with a lawyer.  At that point, Egelhof left the residence.  Defendant was arrested approximately three months later.

### B.    Analysis

"The basic rule of *Miranda* is that an individual must be advised of the right to be free from compulsory self-incrimination, and the right to the assistance of an attorney, any time a person is taken into custody for questioning."  *United States v. Griffin*, 922

F.2d 1343, 1347 (8th Cir. 1990) (citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). "*Miranda* accordingly requires that a warning as to the availability of the privilege against self-incrimination and to the assistance of counsel be issued *prior to questioning* whenever a suspect is (1) interrogated (2) while in custody." *Id.* (emphasis original).

An individual need not be arrested formally to be "in custody." To determine whether an individual is "in custody" within the meaning of the *Miranda* decision, the "relevant factors . . . include an accused's freedom to leave the scene, and the purpose, place, and length of the interrogation." *Griffin*, 922 F.2d at 1348. "Custody occurs either upon formal arrest or under *any other circumstances* where the suspect is deprived of his freedom of action in *any* significant way." *Id.* at 1347 (emphasis original). The Eighth Circuit has articulated a six-element test for this determination of custody, including:

(1)   Whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest;

(2)   Whether the suspect possessed unrestrained freedom of movement during questioning;

(3)   Whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions;

(4)   Whether strong arm tactics or deceptive stratagems were employed during questioning;

(5)   Whether the atmosphere of the questioning was police dominated; or,

(6)   Whether the suspect was placed under arrest at the termination of the questioning.

*Griffin*, 922 F.2d at 1349.  The first three indicia are "mitigating factors," the presence of one or more of which "would tend to mitigate the existence of custody at the time of the questioning."  *Id.*  The final three indicia are "coercive factors," the presence of one or more of which would tend to compel a finding of custody. *Id.*

Although all factors can be relevant, a finding of custody does not require the factual circumstances of a case to present all six indicia; and a particularly strong showing of one factor may compensate for a lesser or non-existent showing of another factor.  *United States v. Axsom*, 289 F.3d 496, 501 (8th Cir. 2002).  For example, the Eighth Circuit has emphasized the importance of advising a suspect that he is not in custody.  *See, e.g.*, *United States v. Czichray*, 378 F.3d 822 (8th Cir. 2004).  The Court is also mindful that "the ultimate inquiry must always be whether the defendant was restrained as though he were under formal arrest."  *Id.* at 828.

Taking in account the *Griffin* factors, the Magistrate Judge concluded that defendant was not in custody.  The Court agrees.  The officers told defendant that he did not have to answer their questions and that defendant could stop the interview at any time.  There is also no evidence that the officers restrained defendant's movement during the questioning.  Rather, defendant freely stood up from the table to address the needs of his son.  Although the officers approached defendant for the interview, defendant was cooperative and agreed to answer questions.

As for the coercive factors, there is no evidence that strong arm tactics or deceptive stratagems were employed during questioning.  The officers did not raise their voices and the interview was completed in less than one hour.  Because two officers

participated in the interview, the Court concludes that the atmosphere of the questioning was police dominated.  However, the officers did not arrest defendant upon termination of the interview.

Applying the *Griffin* factors, the Court concludes that defendant was not in custody during the interview.  Accordingly, the Court denies defendant's motion to suppress his statements made during that interview.

## ORDER

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      The Magistrate Judge's Order of January 23, 2006 [Docket No. 30] is **AFFIRMED.**

2.      Defendant's Motion to Dismiss [Docket No. 42] is **DENIED WITHOUT PREJUDICE as moot**.

**IT IS FURTHER ORDERED** that the Court **OVERRULES** defendant's objection [Docket No. 32] and **ADOPTS** the Magistrate Judge's Report and Recommendation [Docket No. 31].   Accordingly, defendant's motion to suppress evidence of statements [Docket No. 26] is **DENIED**.


DATED:    March 20, 2006            _____ s/ John R. Tunheim _____
at Minneapolis, Minnesota.                JOHN R. TUNHEIM
                                        United States District Judge